Good morning everyone. Before we begin to hear arguments this morning, Judge Rawlinson and I would like to thank and acknowledge Judge George Wu from the Central District of California. He's sitting on assignment with us today, and we're very pleased to have him, so thank you. Okay, first case up for argument is Gerald Peters Gallery v. Stremmel. Mr. Cameron, the appellant. It's all yours. Good morning, Your Honors. May it please the Court. I'd like to reserve two minutes of my time for rebuttals. My name is Tom Bird. I'm from the law firm of Kelleher & McLeod in Albuquerque, New Mexico, here representing the appellants. The version of the concerning requirement imposed by the district court in this case appears to be unprecedented. That version requires the plaintiff to demonstrate that the recipient of a defamatory communication understood that the speaker knew the identity of the person defamed and intended the statement to apply to that person. Significantly, the district court's version appears to enjoy no support in the opinion cited or the opinion written by the district court in any of the briefs written by the appellees in this appeal or in the district court. Can I ask you a quick factual question? Is it clear from the record whether or not the painting is or is not a Frank Johnson? That is a disputed issue, Your Honor. We had expert testimony confirming the authenticity of the painting, attributing it to Frank Tinney Johnson, but the district court didn't address that issue. That would be an issue that would have to be resolved at trial through the submission of conflicting expert testimony, presumably. Counsel, would you agree that there is no Nevada case that resolves this issue? I think that's exactly right, Your Honor. As a matter of fact, my two points this morning that I want to emphasize in my limited time are the district court's reasoning is inconsistent with Section 564. And perhaps more importantly for your purposes, her interpretation is a bad bet as an eerie guess. There's nothing in Nevada law that suggests that the Nevada Supreme Court would adopt this interpretation of Section 564, principally because there's no law supporting it. So your position is because there is no binding Nevada authority, we go to the restatement? The restatement is certainly a sensible, yes, Your Honor, that's certainly a sensible place to start, but we think the district court misapplied, misapprehended Section 564. Can we be confident that the Nevada Supreme Court would adopt the restatement, 564, and interpret it the way you're suggesting? Your Honor, I think that we have cited for you five or six cases where the Nevada Supreme Court has looked to the restatement second as the source of controlling substantive tort law. So I think that that's a sensible, eerie guess. That's a good place to start. We've also cited some other cases from outside the Ninth Circuit where district courts have looked to the restatement as the source of controlling substantive law when there is no controlling opinion from the highest state court. So we think that Judge Adu correctly looked at Section 564. We have no problem with her looking to that provision of the restatement as the source of the applicable substantive law. We think she misapprehended it. And the reason we believe she misapprehended it is because the case law that's cited in the comments, illustrations, notes to Section 564 repeatedly and consistently emphasized that a defendant's intent to refer to the person defamed, the defendant's awareness of the existence or identity of that person is not a required element in a defamation claim. So I think that what the cases tell us is that it isn't necessary for the defendant to know or intend to refer to the person defamed. What matters is the perspective of the recipient. And that perspective can be informed by extrinsic facts not known to the speaker. And that's precisely what we have in this case. Isn't it in this situation the comments were actually towards the painting or about the painting, not about necessarily the source of the painting, but whether or not its authenticity was sufficient? That's right, Your Honor. But it seems to me that a sensible jury could conclude that when Mr. Strummel says, this painting you bought, Mr. Hubbard, is a fake, he is necessarily saying some... That wasn't exactly what the language was, though, was it? He said that he is certain, as a matter of fact, that it is not a Frank Tenney Johnson. So I don't think that that's practically distinguishable from saying that this painting is not what it purports to be and therefore is a fake. He didn't use the word fake. He said it is not a Frank Tenney Johnson. That imputation concerns Gerald Peter's gallery and Gerald Peter's profession or trade. It imputes to them either dishonesty or incompetence. And under Nevada law, such an imputation is defamatory per se. In very much the same way, you'll see in the illustrations in Section 564 the observation that if A says to B that... The objection wasn't specified as to, you know, you bought this fake. It was that this is not a Johnson and therefore, since it's not a Johnson, we wouldn't, for example, put it in our auction gallery. That's right, Your Honor. But Mr. Strummel eventually gets around to leaving it at that. But again, these communications have to be viewed in context. And that scaling back, as Judge Dew referred to it, follows after the accusation that the painting is not what it purports to be. That Mr. Strummel and Mr. Overby have concluded definitely as a matter of fact that it is not a Frank Tenney Johnson. So an accusation that the painting that Mr. Hubbard bought from a person whose identity Mr. Overby and Mr. Strummel didn't know, the accusation that that painting is a fake could be the basis for the conclusion that the statement is defamatory in relationship to the people who sold the painting, notwithstanding the fact... Were there any other e-mails relating to this subject? I'm sorry, Your Honor. Were there any other e-mails relating to this? No, Your Honor. There were a couple phone calls. The three? The e-mails or the documentary evidence relating to the claim. But I think the three that you have before you are – that's the written communication concerning the authenticity. And again, what was the time period that elapsed from the first to the third? The first message was the 13th. I think the last one was November 21st of 2015. So it's just a matter of a few days. A few days. Yeah, so it's like five or six days. Let me ask you, you're going to ask us to make this determination as to the appropriate law for the State of Nevada. Do you want us to refer it to the Nevada Supreme Court to decide? Your Honor, I don't think it's necessary to refer it to the Nevada Supreme Court, although we would have no objection to you doing so. We're confident they would come to the same conclusion that the law underlying Section 564 dictates, which is that it's immaterial whether the defendant knew the identity of the person defamed or intended to refer to that person. It would take a lot longer to get your answer. Yes, Your Honor, that is true. That's an important practical consideration. And for that reason, I don't think it's necessary. I think the law is clear. I think a good, sensible, reliable, eerie guess can be made on the basis of the law that's cited in Section 564 that we have belabored at length. We don't like to guess. We want to make a reasonable assessment that the Nevada Supreme Court, this is what the Nevada Supreme Court would do if the issue were in front of them. And I think that guess is sensible here, a guess in our favor is sensible here, because there's no law going the other way. I've been struck by the absence of precedent. I expected a Rule 28J letter to show up with a bunch of cases that support Judge Adu's reading of Section 564. No such letter. I expected a bunch of cases to be cited in the answer brief that backed her up. Instead, they rely entirely on – Maybe just that there's not that much law in Nevada because they don't generate a lot of written opinions as they do in other states, which may be unmentioned. Yes, like a little bit south of us, you know. Well, Your Honor, I recognize that. That's true. It's very much like New Mexico in that respect. You know, these are not prolific mills of judicial precedent. These cases – Or litigation. Let me just put it this way. There are a number of Nevada cases, however, that do cite to the restatement in assessing the issue of defamation claims. So it's not unheard of. There's a lot of them that actually do that. Yes, Your Honor. And again, I think Judge Adu was correct in looking at Section 564 as the starting place. Where we believe she went wrong was in interposing the requirements that she found our clients couldn't satisfy because the recipients of the statement knew that the speakers didn't know the seller of the painting. So we don't think that interpretation has any support in the law. As a matter of fact, it's contrary – Go ahead. Go ahead and finish your remarks. It's contrary to a long-developed trend in the law of defamation away from a subjective perspective, a focus – and more of a focus on the perspective of the recipient of the communication and a trend away from considerations relating to intent or an understanding of the identity of the person spoken of. Well, as an – and I will just state for the record that the fact that we are less litigious than our neighbors does not reflect on the quality of our law. I couldn't agree with you more, Your Honor. Even I would agree with that. No comment. Thank you. May it please this honorable court, good morning. Mark Gunderson, Austin Suite, appearing today with Mr. Strummel. I appreciate the appellant's approach to this case, but I would suggest that Judge Due was correct as a matter of law in granting summary judgment because the issues are more succinct and straightforward than appellants may – But if she misapplies the law, which is the appellant's argument, isn't that a major problem? She doesn't misapply the law because you need to read her opinion from front to back in context. What Judge Due said was the Strummel emails are not defamatory on their face. And she really starts her analysis with the Nevada law of Lubin versus Kunin. The problem is that she says that. She focuses on the intent of the speaker rather than the recipient, which would be what you would look at under the restatement of 564, and so that's the problem. I don't think that the restatement is the law. I'm not sure that it would be the law if it were presented to the Nevada Supreme Court. Why do you say that? Because this circuit has held in the Jessinger case that Nevada courts have relied on the restatement second of torts to fashion appropriate rules in defamation cases. So, I mean, have you found someplace where the circuit has said Jessinger was wrong? What I'm saying is a slightly different approach to this. What Judge Due said was these statements are not on their face defamatory. And if you look at the Nevada law on what the definition of defamation is, and this is the Lubin versus Kunin case, 117 Nevada 107. A statement is defamatory when it would tend to lower the subject in the estimation of the community, excite derogatory opinions about the subject, and hold the subject up to contempt. The subject of these emails are not Peters. The subject of these emails is the authenticity of the painting, Rain and the Sun. There's no statement that can be attributed to Peters without implication, subjective intent, speculation on the part of anybody else. The problem is you have to consider the entire context of the discussion. The entire context of the discussion was it started out insofar as a decision to sell certain of the paintings that Mr. Hubbard had. And so therefore the context was insofar as not only the source of the painting, but the value of the painting. And the discussion was basically that Mr. Hubbard had bought a fake. I don't like the word fake. This is an inauthentic painting. Mr. Hubbard purchased this painting in 2012 as a part of a commercial transaction. The parties defined for themselves their relationship in the art trade agreement of November 9, 2012. In that art trade agreement, Mr. Peters represented that he had title to the property, the painting, and the property was authentic. Those are two warranties that he made. The best objective evidence you have of how this was received by Mr. Peters is his attorney's letter on December 3 of 2015, where attorney Gorrance sends a letter to Peters and said, we have information this is an inauthentic painting. It is a breach of the warranty. Mr. Peters, you have two options. One, give us our money back, which is the bargain for remedy, or prove that this painting was indeed authentic. Mr. Peters chose to rescind the transaction and in fact traded a third painting to Mr. Peters. But wouldn't you concede that in the context of this discussion, in other words, where somebody is talking about the seller of paintings, you know, in reference to authenticity, that in essence, that is that person's stock and trade. Because if there is a question as to the authenticity of the paintings that are sold by a gallery, that pretty much tanks the gallery's reputation in the toilet, doesn't it? No, I do not agree with that. Does it make a difference as to authenticity? Yeah, authenticity of any object, whether it's a gem or an automobile or a luxury boat, yeah, authenticity comes into question. You can't speculate that just because this is inauthentic that there's an attribution. You know, you may talk about that in Mercedes, you know. One Mercedes is the same as another. But if you're talking about a painting and, you know, a lot of art is simply the value is from the source. I mean, the art itself is, I mean, you could get an elephant, I suppose, to paint certain things that look like some modern painting. But if the thing is signed by Picasso, it all of a sudden becomes, you know, something that is worth a lot more than, you know, if you or I paint it, even though our paintings might be just as nice. The only question addressed by Stremel was authenticity, not Mr. Peter's, Mr. Peter's implementation. You have to imply, and this is the argument, and I think this is where the argument fails. You have to imply a derogatory, subjective intent to convey a defamatory statement attributable to Peter's. You can't do that because now you're in the world of speculation. It is just as easily assumed that when Mr. Peter's obtained this painting from Mr. Codner in Kansas City, that he had an inauthentic painting pawned off on him. Isn't that a jury question in the end, though? No. The way you stated it, it sounded just like a perfect jury question. It is not a jury question because then you're asking the jury to speculate. No. That's speculation. You're going to say to the jury, this is a reasonable interpretation. You just said, like this and like this. That sounds to me like it's a classic jury question. I don't believe that it is because I think Judge Dew is absolutely correct. You can't make a reasonable determination that these emails, which go to the subject of the emails, the paintings, and then to take it to the next step without any collaborating or corroborating inferences to be drawn from the evidence. If you look at Mr. Gorrance's letter of December of 2015, there is not a single word in there about Peter's or Peter's new or anything else. All he said was, we have information. This is inauthentic. And that was the bargain the parties made. Can I back you up? At the very beginning, you said that this is not the law in Nevada. The statement 564 is not the law in the state of Nevada. Yes, you said that's not the law in Nevada. What's your basis for stating that? I mean, I recognize there's no Nevada Supreme Court opinion on the subject. The only Supreme Court. But the Nevada Supreme Court sure has looked to the free statement in the libel, slander kind of area. On occasion. Well, but they have, and we acknowledge that they have. On occasion. So for us, we look at what the Nevada Supreme Court would reasonably do. We look for data points that suggest how they would interpret, you know, what law they would apply. And I think the starting point, though, is they would start with the definition of what defamation is. And when you have the only subject in these emails being the painting, I don't think you're going to leap to some strained interpretation to find defamation. Because you're just going to be in an area of asking juries to speculate on inferences that might occur in some circumstances. This would throw the entire law of defamation open to Katie Bar the Door. And this is a case, quite frankly, of an expert opinion which is different than another's expert opinion. That does not get you to the law of defamation, in my opinion. Counsel, are you saying, then, that Judge Duke erred in relying on the restatement? I didn't say she erred in relying on the restatement. I think she was correct when she read the restatement in the context of the Nevada cases on what defines defamation. I think she was correct. So when I make the comment that Judge Duke was correct, I'm relying on the fact we have a definition of what defamation is. She finds it's not defamation. It would be not reasonable under that definition because the subject is the painting, not Mr. Peters. And don't speculate. In your view, all she did was look at the statements and say these are not defamatory on their face? End of story? She said that it would not be reasonable or probable that those statements could be understood as defamatory on their face. And the context that I see... Is that a jury question, though? I don't believe so. The context, and I think this is terribly important, is this is a commodity in a commercial transaction that parties bargain for. This is the bargain they had, the bargain they received. End of discussion. Well, he has a business disparagement claim here as well, doesn't he? Well, there is, yes. But you can't get there from here, as Judge Duke found, unless you find it's defamatory on its face. Okay. I'll give you two minutes for rebuttal. I don't believe I'll need that long, but thank you very much. That's fine. I really only have two points to make on rebuttal. First is Mr. Gunderson's vacillation on the applicability of Section 564, and whether Judge Duke correctly looked to 564 as the source of the substantive law on the concerning requirement is puzzling, because Section 564 is the only authority cited in the opinion. It's the only authority the appellees rely on in arguing, advocating the complicated version of the concerning requirement that Judge Duke applied. My second point is that the law in Nevada says that whether a statement is subject to a defamatory communication is initially a determination of law. The judge can decide that there's no way a reasonable jury could understand a communication as having a defamatory meaning, but once the judge decides that it is susceptible to a defamatory interpretation, the question of whether it is defamatory is a matter to be resolved by the fact finder in the case of a jury question. So I agree with the questions posed to Mr. Gunderson that the question of whether the emails were susceptible to a defamatory interpretation is a question of fact to be decided at trial. Thank you, Your Honor. Okay. Thank you. The matter is submitted.
judges: Paez, Rawlinson, Wu